UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-P371-H
CRIMINAL ACTION NO. 3:98CR-91-H

LAWRENCE EDWARD CRAYTON, JR.  MOVANT/DEFENDANT

V.

UNITED STATES OF AMERICA  RESPONDENT/PLAINTIFF

**MEMORANDUM OPINION**

Movant, Lawrence E. Crayton, Jr., has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. Crayton says that his conviction for his drug-trafficking crimes and his loss on appeal are his lawyer's fault–the result of ineffective assistance of counsel. The case was tried twice before this judge. The Court agrees with the United States that the motion cannot succeed in these circumstances.

I.

On April 15, 1998, Detective George Osborne with the Los Angeles, California, Police Department received a tip that a UPS package bound for Louisville, Kentucky, was suspicious. The suspicion arose because the package contained a fictitious return address in Van Nuys, California.

Once the package arrived in Louisville, detectives had a drug dog pass it and other packages. The dog alerted on the California package, and the detectives obtained a warrant. The subsequent search revealed six kilograms of cocaine. The cocaine was in two packages of three

kilograms each.

The package was addressed to "Alex Winters" at 541 North 44th Street in Louisville, Kentucky. The detectives replaced all but a small portion of the cocaine with filler material. They also placed a tracking device in the package and resealed it. The detectives then set up surveillance on the residence while one detective delivered the package disguised as a UPS driver. When the detective posing as the UPS driver knocked on the door, no one answered. At that point, Crayton arrived in a Suburban he had purchased for cash that day. He approached the undercover detective, claimed to be "Mr. Winters," and signed that name for the package. The undercover detective noticed that there was another person in the Suburban.

Crayton left with the package. The police followed him. Crayton had his passenger, Andre Alexander, open the package. When Crayton saw the cocaine sample the police had left in the package, Alexander threw the package out of the Suburban in an alleyway. Crayton sped out of the alley and led police on a chase until he was finally stopped.

When the detectives did not find the package in Crayton's suburban, they backtracked Crayton's route, and found the package in a fenced-in area in the alleyway. When he was arrested, Crayton gave the name "Manny Harris." Kentucky state authorities charged Crayton in the name "Manny Harris."

A federal grand jury charged that Crayton conspired with Alexander and with others known and unknown to the grand jury to possess with intent to distribute six kilograms of cocaine, in violation of 21 U.S.C. § 846; attempted to possess with intent to distribute six kilograms of cocaine, also in violation of 21 U.S.C. § 846; and possessed with intent to distribute six kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Crayton's first trial ended in a mistrial, though the jury acquitted the co-defendant, Alexander. Upon retrial, Crayton was convicted on all counts. The Court sentenced Crayton to life imprisonment. The Sixth Circuit affirmed Crayton's conviction and sentence in a published opinion. *United States v. Crayton*, 357 F.3d 560 (6th Cir. 2002).

## II.

Crayton complains that his counsel was ineffective in counsel's trial preparation, at trial and on appeal. Crayton complains specifically that his counsel (1) failed to adequately consult Crayton; (2) failed to investigate to find "the real" Alex Winters; (3) failed to investigate the constitutionality of Crayton's prior convictions; (4) should not have presented a defense based on Crayton's character; (5) failed to call the lab technician who tested Crayton's cocaine to explain the discrepancy between the weight reported in the original police report and the weight the technician found; (6) "compelled" him to testify; and (7) should have raised on appeal three issues instead of, or in addition to, the issues counsel raised. Crayton fails to show the requisite deficient performance and prejudice to entitle him to relief.

In order to prove ineffective assistance of counsel, Crayton must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984). Judicial scrutiny of counsel's performance is highly deferential. *Engle v. Isaac*, 456 U.S. 107, 133-34 (1982). The proper standard from which an attorney's performance should be viewed is that of a "reasonably competent attorney." *Strickland*, 466 U.S. at 687; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Crayton must prove that the representation of counsel was "unreasonable under the prevailing professional norms and that the challenged action was not sound strategy." *See Kimmelman*, 477 U.S. at 381.

3

In addition to showing that his counsel has been deficient, Crayton must also show prejudice. *See Strickland*, 466 U.S. at 697. Specifically, this requires Crayton to show that but for counsel's specified errors, there is a reasonable probability the result of the proceeding would have been different. *See id.* The petitioner's burden is intentionally heavy. *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). This is so because the purpose of the constitutional requirement of effective assistance is to ensure a fair trial.

### III.

Crayton first complains that his counsel failed to consult with him enough before his trial. While Crayton admits that counsel consulted with him, he argues that counsel should have consulted more often.

Counsel should consult with his client prior to trial. *Florida v. Nixon*, 125 S. Ct. 551, 560 (2004). However, no set number of consultations is required to render effective assistance. Crayton admits that his counsel discussed his proposed strategy with Crayton. Crayton asked questions, and his counsel gave Crayton the benefit of his professional opinion. Crayton even admits that, though he was not convinced of the wisdom of counsel's proposed plan, Crayton agreed to proceed as counsel proposed. Such circumstances cannot be a basis for overturning a conviction, otherwise every unsuccessful defendant could second-guess their trial strategy.

Crayton's real complaint is that his counsel should have investigated more. He complains that his counsel should have investigated to find the "real" Alex Winters and should have investigated his prior convictions and challenged the constitutionality of those prior convictions. Crayton claims that his counsel told Crayton that he didn't think these investigations were necessary because Crayton's prior counsel had determined that the

4

investigations were unnecessary. Crayton further claims counsel told him that he could not challenge the convictions to attack the 21 U.S.C. § 851 notice because the convictions were more than five years old. Counsel must investigate a defendant's case to a reasonable degree to enable counsel to make reasonable strategic choices. *Strickland*, 466 U.S. at 690-91. Crayton cannot show, however, that his counsel performed deficiently in failing to further investigate to find Alex Winters, even if the Court credits Crayton's allegation that his counsel did not investigate the avenues Crayton claims he told his counsel. The evidence in this case, as disclosed in Crayton's first trial, strongly supports the inference that Alex Winters does not exist or that Crayton used that name in his cocaine distribution scheme.

Crayton alleges three other errors at trial: (1) basing the defense on Crayton's character, (2) failing to call the lab technician who weighed and analyzed Crayton's cocaine, and (3) "compelling" Crayton to testify. Because Crayton is complaining about trial strategy, he must overcome the presumption that his counsel's actions might be considered sound strategy. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

In this case, both defense attorneys arrived at the same conclusion as to trial strategy. The first trial based on that strategy resulted in a mistrial. And most importantly, Crayton admits he agreed to counsel's strategy. His claim that he told counsel that the failure of that strategy would be counsel's responsibility doesn't help him. He makes no claim that he did not know the risks involved in the strategy. On the contrary, he admits he considered all the problems he now claims show ineffective assistance of counsel before he agreed to counsel's proposed strategy.

5

The evidence does not support a claim of ineffective assistance at the trial level.

Crayton's claim that his counsel's performance somehow "compelled" him to testify in violation of his Fifth Amendment rights is also unavailing. He says that the "real" Alex Winters set him up. Only by testifying himself could Crayton present that defense. Common sense suggests that even if Alex Winters actually exists, he would likely either not testify or deny Crayton's claim. Regardless of whether Crayton's counsel put Crayton's character in issue, therefore, he would have had no choice but to testify to his Alex Winters defense. Any "compulsion" was the result of the defense Crayton himself insisted on presenting. This was neither his counsel's fault nor a violation of Crayton's Fifth Amendment rights.

IV.

Crayton complains that his counsel was ineffective on appeal. Appellate counsel is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "[I]t is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another." *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Thus, Crayton must show that the issues he claims counsel should have raised were "clearly stronger than issues that counsel did present." *Id.*

Crayton's first issue is that the prosecutor was guilty of prosecutorial misconduct when he argued that Crayton was a "deadbeat dad." However, the prosecutor made the comment in rebuttal to Crayton's argument that he was a hero and a role model. And, he told the jury that to consider that evidence only in a manner instructed by the Court. The prosecutor's statement was fair rebuttal to Crayton's argument.

Though Crayton also says that the United States was required to list his prior offenses in

the indictment and prove that the prior convictions were final. This Sixth Circuit precedent is to the contrary. *United States v. Burgin*, 388 F.3d 177, 185-86 (6th Cir. 2004).

Finally, Crayton says that his counsel should have accused himself of ineffectiveness on appeal for allegedly failing to protect Crayton's rights under *United States v. Booker*, 125 S. Ct. 738 (2005), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004). But ineffective assistance of counsel claims are more properly raised in a 28 U.S.C. § 2255 motion, not on direct appeal.

V.

Crayton cannot show deficient performance, the Court need not address prejudice. Even considering this prong of the *Strickland* test, Crayton cannot show prejudice.

Even if one might consider one or two consultations to be deficient on counsel's part, Crayton cannot show that he was unable to provide counsel with all necessary information or that he suffered prejudice. Crayton alleges nothing more that he needed to accomplish with more consultations.

Crayton also fails to show prejudice from counsel's alleged failure to investigate. Even if counsel unreasonably failed to investigate and find the "real" Alex Winters, finding him would not have helped Crayton. A real Alex Winters would likely not have testified or supported the United States' case against Crayton. Crayton can thus show no prejudice.

Crayton fails to show his counsel's alleged errors at trial prejudiced him. He argues that his counsel should not have put his character in evidence as part of his defense. Criminal history is one of those types of evidence courts are most cautious about because of its tendency to influence juries. But in Crayton's case, the evidence was so strong that his criminal history wouldn't have made a difference.

Crayton fails to show prejudice from his counsel's failure to call the lab technician who weighed the cocaine. The technician determined the cocaine weighed six kilograms. The detective who investigated Crayton's crime was the one who wrote down the four-kilogram weight. The detective was the witness who needed to explain the lower weight, and he testified at trial and was subject to cross-examination. There was no real possibility the lab technician would testify inconsistently with his report. Crayton fails to show prejudice.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Lawrence Edward Crayton, Jr. *Pro Se*
Terry M. Cushing, AUSA