IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| LAWRENCE CRAYTON, JR. ) | Case No. 3:98-cr-00091 (TBR) |
| ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Lawrence Crayton, Jr.'s *pro se* Motion for Compassionate Release, (Mot. for Release), Dkt 324. The Government has responded, (Resp.), Dkt. 326. Crayton has replied, (Reply), Dkt. 327, and also filed a surreply, (Surreply), Dkt. 328. Crayton has also filed a Motion Requesting Expedited Decision, (Mot. for Expedited Decision), Dkt. 330. As such, this matter is ripe for adjudication.

For the reasons stated herein, Crayton's Motion for Compassionate Release, Dkt. 324, is **DENIED** and his Motion for Expedited Decision, Dkt. 330, is **DENIED AS MOOT**.

**I.   FACTUAL BACKGROUND**

In 1998, Lawrence Crayton signed for a package containing six kilograms of cocaine. *See* Mot. for Release at 2; *see also United States v. Crayton*, 357 F.3d 560, 562–63 (6th Cir. 2004). Unbeknownst to Crayton, local police officers were watching, because they had received a tip that the package suspiciously contained a false return address. *See* Mot. for Release at 2; *see also Crayton*, 357 F.3d at 562–63. The police officers pursued Crayton and arrested him. *See* Mot. for Release at 2; *see also Crayton*, 357 F.3d at 563. A jury convicted Crayton of conspiring to possess cocaine with the intent to distribute, attempting to possess cocaine with the

1

intent to distribute, and possessing cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Mot. for Release at 2; *see also Crayton*, 357 F.3d at 563–64. Crayton received a sentence of life imprisonment, based in part on two prior felony drug convictions. *See* Mot. for Release at 2; *see also Crayton*, 357 F.3d at 563–64.

Crayton, who is currently incarcerated at FCI Berlin, now seeks compassionate release. *See* Mot. for Release.

## II. LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (*citing United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release

request—whichever is earlier." *Jones*, 980 F.3d at 1105 (*citing* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (*citing Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.' " *Id.* (*citing Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.' " *Id.* (*citing Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (*citing* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and

3

compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (*quoting* 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant

(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court determines whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 2021 WL 50169, at *1 (*citing Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

### III. DISCUSSION

"[A]n imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105.

On March 16, 2020, Crayton submitted a request for compassionate release to the warden of his facility. *See* Order, Dkt. 322, at 1. Exactly thirty days later, the warden denied the request and informed Crayton that he had twenty days to appeal the decision. *See id.* Crayton then filed a motion for compassionate release before this Court. *See id.* The Court concluded that Crayton failed to exhaust his administrative remedies by not pursuing his administrative appeals options.

*See id.* at 2.  Therefore, on August 6, 2020, the Court denied Crayton's motion and gave him leave to refile his motion once he exhausted his administrative remedies.  *See id.*

Rather than appeal the original denial, Crayton submitted another compassionate release request on August 12, 2020.  *See* Mot. for Release.  According to Bryan Beegle, the Case Management Coordinator with the Federal Bureau of Prison FCI Berlin, Crayton's second request for compassionate release was a photocopy of his original request.  *See* Beegle Emails, Dkt. 326-1.  Beegle maintains that "the warden's previous response "was still deemed accurate and sufficient" because "the request was considered repetitive" and "no new circumstances or information [were] presented."  *See id.*  Beegle also asserts that Crayton "was advised [that] he could utilize the Administrative Remedy process."  *See id.*  On that basis, the warden never responded to Crayton's second compassionate release request.  *See id.*

In response, Crayton filed a second Motion for Compassionate Release before this Court, arguing that he exhausted his administrative remedies because the warden did not respond to his second compassionate release request within thirty days.  *See* Mot. for Release.  Alternatively, Crayton argues that his first compassionate release request was in fact exhausted.  *See Surreply*; *see also* Second Supp. Br., Dkt. 329.  The Government disagrees.  *See* Reply.  According to the Government, Crayton has not satisfied the exhaustion requirements because he "has not filed an administrative appeal or pursued his [first] Compassionate Release request any further."  *Id.* at 3.  Crayton responds, claiming that his administrative appeal was time-barred because it could only be filed more than twenty days after the warden denied the request.[1]  Reply at 2–3.

---

[1] To the extent Crayton renews his argument that the first motion for compassionate release was exhausted, the Court is not persuaded.  Crayton claims that he exhausted his first motion because he "submitted his first request for compassionate release to the warden on March 16, 2020, and he filed his first motion for compassionate release in the district court on April 17, 2020."  Second Supp. Br. at 2.  This argument misses the mark.  For exhaustion purposes, the critical date is when the warden responds, not when Crayton files his motion for compassionate release before the district court.  *See* 18 U.S.C.A. § 3582(c)(1)(A).  Moreover, this Court has already found that here "the warden's response was filed and delivered exactly thirty days after Defendant's request was filed."  *See* Order at 2.

6

Once again, the Court concludes that Crayton has not exhausted his administrative remedies. A "second request for compassionate release" remains unexhausted if "the second request for compassionate release is not materially different from [the unexhausted] first request." *United States v. Delco*, No. CR 09-57, 2020 WL 4569670, at *5 n.30 (E.D. La. Aug. 7, 2020); *see also United States v. Bing*, 2020 WL 4043610, at *2 (D.S.C. July 17, 2020) (holding that the court could not hear a motion filed by defendant who failed to appeal denial of his first request for compassionate release and submitted a second request seeking the warden's signature for the first request, to which the warden had not yet responded). In other words, "by merely filing a second . . request, a defendant cannot subvert the requirement that he fully appeal the warden's initial denial of his request before bringing a motion in court." *Id.*; *see also United States v. Scott*, 2020 WL 3453139, at *2 (D. Del. June 24, 2020) (defendant did not present evidence that he had appealed first request which was denied by the warden, nor was it clear whether a second request "raised new grounds requiring exhaustion" or whether he had exhausted administrative remedies for the second request). Here, Crayton's second request is not just materially similar to his first request, it is identical to his second request. As other courts have explained, Crayton should see his first request through to the end of the administrative process, as contemplated by § 3582(c)(1)(A).

Underpinning this conclusion is the fact that Beegle states that Crayton "was advised he could utilize the Administrative Remedy process," yet "no information . . . suggest[s] inmate Crayton followed-through and made a Request for Administrative Remedy." Beegle Emails; *see also* Reply (arguing that the warden was required to formally respond to the second request, but not disputing that Crayton was advised that he could make an appeal). For his part, Crayton seems to assume that his appeal would have been time-barred and states that various Covid-19

lockdowns prevented him from researching how to file an appeal. *See* Mot. for Release; *see also* Reply; Surreply. But the evidence in the record supports a contrary conclusion; it appears that Crayton was made aware of his right to appeal and he never followed-up with that information. *See* Beegle Emails. Moreover, prisoners are supposed to exhaust their administrative remedies through appeals, not assumptions. *See Delco*, 2020 WL 4569670, at *5 n.30.

The Court concludes that Crayton has not exhausted his remedies, *see supra*. And although not controlling with respect to the Court's disposition of his claims, the Court briefly notes that Crayton's allegations, as stated now, are unlikely to succeed on their merits, *see infra*.[2]

If Crayton had exhausted his administrative remedies, the Court would consider whether there are "extraordinary and compelling reasons" that justify a reduction of his sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.' " *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (emphasis in original) (*quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)).

Crayton argues that extraordinary and compelling reasons exist due to (1) the length of his sentence, especially in light of the First Step Act, (2) reclassification of his prior felony to a misdemeanor; and (3) his rehabilitation. *See* Mot. for Release; *see also* Third Supp. Br., Dkt. 332 (*citing United States v. Owens*, 996 F.3d 755 (6th Cir. 2021)).

---

[2] The Court is still able to discuss the merits of Crayton's claims (without necessarily ruling on them) because "[n]othing in this administrative exhaustion requirement clearly limits our jurisdiction. It merely imposes a requirement on prisoners before they may move on their own behalf." *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). This approach is consistent with how other district courts have navigated similar issues. *See, e.g.*, *United States v. Frye*, No. CR 5:15-7-KKC, 2020 WL 2513826, at *2 (E.D. Ky. May 15, 2020) ("Regardless, even if the Court were to consider the substance of Defendant's compassionate release motion, it would fail on its merits.").

Let's take Crayton's sentencing disparity argument first. In a series of recent cases, the Sixth Circuit has discussed whether sentencing disparities created by statutory changes are an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021); *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021); *Hunter*, 12 F.4th 555. In *Hunter*, its most recent decision on the matter, the Sixth Circuit explained that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." 12 F.4th 563 (*citing Jarvis*, 999 F.3d at 445–46; *Wills*, 991 F.3d at 723–24; *Tomes*, 990 F.3d at 505). "Congress," according to the Sixth Circuit, "did not hide the authority to nullify the non-retroactivity doctrine in the words 'extraordinary and compelling reasons.' " *Id.* at 566. Although the Court is sympathetic to Crayton's position, it is bound by the prior decisions of this circuit.[3]

Next up is Crayton's reclassification argument. Again, Crayton faces the problem that criminal judgments are generally final and non-retroactive. *Accord United States v. Diaz*, 838

---

[3] The Court acknowledges that in *United States v. Owens* a divided panel of the Sixth Circuit held that "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." 996 F.3d at 763. Judge Thapar dissented, stating that a sentencing disparity resulting from the First Step Act's reforms is, "[f]or better or worse," an "ordinary practice," not an "extraordinary and compelling reason." *Id.* at 764–65 (*citing Dorsey v. United States*, 567 U.S. 260, 280 (2012)). It is also important to note that the court in *Owens* made special mention of the fact that the defendant there argued that extraordinary and compelling reasons existed, in part, because his lengthy sentence resulted from his decision to exercise his right to trial. *Id.* at 761. In other cases, however, the Sixth Circuit has taken a different approach. *Tomes* declared that courts cannot "us[e] § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." 990 F.3d at 505. *Jarvis* made it clear that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction." 999 F.3d at 445. *Hunter* held that any sentence disparity between a defendant, which did not exist at the time defendant was sentenced, does not constitute an "extraordinary and compelling" reason warranting a sentence reduction under the compassionate release statute. 12 F.4th at 571–72. Considering this legal landscape, the Court concludes that the weight of Sixth Circuit authority supports the *Hunter* decision.

F.3d 968, 972 (9th Cir. 2016) ("When a state grants post-conviction relief to a defendant with respect to his state felony conviction, we do not generally apply those changes retroactively for purposes of determining whether a federal sentencing statute's requirements are met."); *United States v. Collazo-Santiago*, 637 F. App'x 951, 953 (7th Cir. 2016) ("[Defendant] also argues that the district court should have vacated his firearm conviction because the state felony on which it was based was reduced to a misdemeanor before sentencing. But this argument is inappropriate in a § 3582(c) proceeding, which does not permit a full resentencing, let alone a redetermination of guilt."); *see also United States v. Aguilar-Cortez*, No. 2:95-CR-20-01 WBS, 2021 WL 492876, at *1 (E.D. Cal. Feb. 10, 2021), *reconsideration denied*, No. 2:95-CR-20 WBS, 2021 WL 949632 (E.D. Cal. Mar. 12, 2021) ("California's reclassification of the crime of which defendant was convicted from a felony to a misdemeanor, long after his state and federal convictions became final, does not amount to an extraordinary and compelling reason to warrant reduction of defendant's sentence under the compassionate release statute."); *c.f. Hunter*, 12 F.4th at 569–72; *United States v. McClendon*, No. 3:06-CR-00114-TBR, 2021 WL 4943058, at *4 (W.D. Ky. Oct. 22, 2021). The Court reiterates, however, that it is troubled by the fact that if Crayton's prior conviction had been a misdemeanor at the time of his conviction, he would have a significantly reduced sentence.

      The Court now turns to Crayton's rehabilitation argument. To demonstrate his rehabilitation, Crayton explains that he has "[earned] educational achievements in business and he has served more than 21 ½ years with only one minor incident report on his BOP file." Mot. for Release at 8. However, "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.' " *Hunter*, 12 F.4th 561 (*quoting* 28 U.S.C. § 994(t)). And if Crayton's sentencing disparity and

reclassification arguments fall, the rehabilitation argument stands alone as the only possible extraordinary and compelling reason. That said, the Court does applaud Crayton for his progress in prison—all of his achievements are, indeed, impressive.

Thus, the allegations, as they are stated now, are unlikely to satisfy the applicable standard.

Lastly, because the Court has now addressed Crayton's motion for compassionate release, his Mot. for Expedited Decision is denied as moot.

### IV.    CONCLUSION

For the reasons stated herein, Crayton's Motion for Compassionate Release, Dkt. 324, is **DENIED** and his Motion for Expedited Decision, Dkt. 330, is **DENIED AS MOOT**.

**IT IS SO ORDERED**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 29, 2021

cc: Lawrence Edward Crayton, Jr.
12043-112
BERLIN
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail
P.O. BOX 9000
BERLIN, NH 03570
PRO SE